IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **MARYLAND GAMES, LLC**<br>8403 Colesville Road, Suite 1100<br>Silver Spring, MD 20910 | *<br>*<br>* |
| **PLAINTIFF,** | * |
| V. | *  CIVIL ACTION NO._____ |
| **TEX GAME SYSTEMS, LLC**<br>2219 S 48th Street, Suite B<br>Tempe, AZ 85282<br>   <u>serve</u>: Northwest Registered Agent<br>         Service, Inc.<br>         8 The Green, Ste. B<br>         Dover, DE 19901 | *<br>*<br><br>*<br><br>* |
| and | * |
| **ANTHONY LEE STUART**<br>1427 E. Dunlap Ave., #219<br>Phoenix, AZ 85020-0005 | *<br><br>* |
| and | * |
| **CHRISTOPHER JOHN LULEK**<br>2219 S 48th Street, Suite B<br>Tempe, AZ 85282 | *<br><br>* |
| **DEFENDANTS.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **COMPLAINT**

Plaintiff Maryland Games, LLC ("Maryland Games"), by and through its undersigned counsel, files this Complaint against Defendants, Tex Game Systems, LLC ("Tex Game Systems"), Christopher Lulek ("Lulek"), and Anthony Lee Stuart ("Stuart") (collectively, the "Defendants"), jointly, severally, and individually, and for grounds, states as follows:

## Parties

1. Plaintiff Maryland Games is a limited liability company organized and existing under the laws of the State of Maryland, with its sole member, Josh Belinfante, a citizen of the State of Georgia.

2. Defendant Tex Game Systems is a limited liability company organized and existing under the laws of the State of Delaware, with its members known to be Defendant Christoper John Lulek and Jennifer McKoughlin, both citizens of Arizona.

3. Defendant Anthony Lee Stuart is a citizen of the State of Arizona.

## Jurisdiction and Venue

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. As noted herein, there is complete diversity among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). As discussed herein, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Calvert County, Maryland.

## Statement Of Facts

A. Asset Purchase Agreement

6. Maryland Games is a gaming manufacturer licensed by the Maryland Lottery & Gaming Control Agency to produce software for variety of technologies, such as instant bingo machines, table game equipment, and other electronic gaming devices.

7. On September 14, 2017, pursuant to an Asset Purchase Agreement, Maryland Games paid $1,200,000 to acquire certain intellectual property, games, licenses, books, records, contracts, and warranties from Technology Exclusive, Inc. ("Technology Exclusive").

8. Technology Exclusive was a gaming manufacturer that, at the time, was organized and existed under the laws of the State of Nevada.[1]

9. By way of the Asset Purchase Agreement, Maryland Games is and has been the rightful owner of the source codes[2] for several games, including but not limited to: (1) the 25-line Frankencash game; (2) the single line RWB Flaming 7's game; and the (3) single line Stars and Stripes game (the "Games").

10. Unbeknownst to Maryland Games – and despite the explicit acknowledgements and warranties in the Asset Purchase Agreement – Technology Exclusive had pledged all of its assets as collateral for a loan in then outstanding amount of approximately $1,500,000.

11. Technology Exclusive and its agents misrepresented to Maryland Games that the assets transferred under the Asset Purchase Agreement were free and clear of any claims or encumbrance.

12. As a result of those misrepresentations and Technology Exclusive's refusal to pay its debt, Maryland Games suffered damages of approximately $1,300,000 in defending and satisfying the claim of Technology Exclusive's secured lender.

B. Lulek and Stuart's Employment at Tex Game Systems

13. Upon information and belief, in 2022, several of the individuals previously involved with Technology Exclusive, formed a new entity, Tex Game Systems.

14. Upon information and belief, Lulek is the founder and Chief Executive Officer of Tex Game Systems.

---

[1] Upon information and belief, sometime after Maryland Games and Technology Exclusive executed the Asset Purchase Agreement, Nevada permanently revoked Technology Exclusive's corporate status.

[2] "Source code is the human-readable set of instructions written in a programming language that tells a computer how to perform specific tasks." Brennan Whitfield, *What is Source Code?*, BUILTIN (Aug. 25, 2025), https://builtin.com/software-engineering-perspectives/source-code. Source code is considered the "basic foundation for creating software." *Id.*

15. Upon information and belief, Tex Game Systems is a gaming manufacturer that creates and operates the software for several pull-tab games, such as Lucky Sevens and Frankencash.

16. As part of its operations, Tex Game Systems routinely conducts repairs for such gaming software by traveling to the location of the gaming devices and restoring them on-site.

17. Upon information and belief, Stuart is an experienced gaming software developer who from January 1996 to January 2017 was employed by Technology Exclusive as the lead programmer and designer of accounting, reporting and player tracking systems for several casinos.

18. Upon information and belief, Stuart has been employed as the Chief Technology Officer for Tex Game Systems since January 2024, holding the responsibility of developing gaming software and conducting on-site repairs of gaming devices.

19. Upon information and belief, while employed at Tex Game Systems, Stuart had access to a myriad of pull-tab gaming systems and routinely conducted repairs on such systems.

20. Upon information and belief, both Lulek and Stuart were acting as agents of Tex Game Systems, and/or within the scope of their employment, at all times relevant to this Complaint, in that they committed the acts herein while working in furtherance of Tex Game Systems' interests.

C. Fraud Scheme

21. Upon information and belief, in or around April 2025, Detective Michael J. Mudd ("Detective Mudd") of the Calvert County Sheriff's Office became aware of a suspected fraud scheme taking place at Traders Seafood Steak & Ale ("Traders").

22. Traders is a restaurant and licensing gambling establishment operating in Calvert County, Maryland.

23. The Traders' facility has a game room, which is separate from its restaurant space, and is well known for its operation of instant bingo pull tab machines.

24. Traders' game room includes the Games owned and operated by Maryland Games.

25. Pursuant to an Equipment Placement Agreement, Maryland Games receives a fee calculated from the net revenues of the Games.

26. Upon information and belief, the staff at Traders observed that, during a one-month period, Stuart and two other individuals repeatedly visited the game room and utilized the instant bingo pull tab machines.

27. During these visits, Stuart and the two other individuals believed to be employees or agents of Tex Games Systems would regularly win suspiciously large sums of money.

28. Upon information and belief, the suspicious activity prompted Traders' staff and law enforcement to review surveillance footage of Stuart and the two other individuals.

29. The footage revealed the individuals concealing pre-printed pull-tab tickets and inserting them into the instant bingo pull tab machines.

30. Upon information and belief, the Calvert County Sheriff's Office conducted an audit of the gaming machines' logs at Traders with the assistance of the Federal Bureau of Investigation's White-Collar Crime Squad.

31. The audit revealed irregularities that law enforcement interpreted as consistent with Stuart and other individuals causing the machines to pay fraudulent jackpot payouts.

32. On or about November 6-7, 2025, Stuart, acting as an agent of Tex Game Systems, was scheduled to perform repairs on some of the instant bingo pull tab machines at Traders.

33. On November 10, 2025, Stuart returned to Traders. After Stuart arrived at Traders, a staff member received a call from Lulek who provided a false explanation regarding Stuart's

whereabouts, stating that Stuart was attending dentist and doctor appointments. Law enforcement then apprehended Stuart and arrested him.

34. Upon information and belief, Lulek and Stuart, acting as agents of Tex Game Systems, by agreement and understanding conspired to perpetrate a fraud scheme by using Maryland Games' source codes and server software to cause the machines at Traders to award fraudulent payouts.

35. In furtherance of this scheme, Lulek and Stuart, acting as agents of Tex Game Systems, scheduled Stuart to perform repairs at Traders in order to obtain the fraudulent payouts using Maryland Games' source codes and server software.

36. The State of Maryland has charged Stuart with felony theft scheme of over $100,000, complicit and illegal alteration of data, and felony theft.

37. Upon information and belief, after Stuart was detained and advised of his *Miranda* rights, he spoke with Detective Mudd from the Calvert County Sheriff's Office and admitted to using "fictitious vouchers" to wrongfully obtain winnings from the Games.

## COUNT 1
### (Civil Conspiracy)

38. Maryland Games incorporates herein the allegations made in the preceding paragraphs of this Complaint.

39. Lulek and Stuart, acting as agents of Tex Game Systems, by agreement and understanding conspired to perpetrate a fraud scheme at Traders in which they utilized Maryland Games' property, including its source codes and server software for the Games, in order to create fake pull-tabs that were subsequently inserted into the bingo machines to cause fraudulent payouts.

40. Lulek and Stuart, acting as agents of Tex Game Systems, scheduled Stuart to perform repairs on the machines at Traders on several occasions in furtherance of the fraud scheme

to use Maryland Games' property, including its source codes and server software for the Games, to obtain fraudulent payouts by remotely logging in to generate fraudulent payout tickets.

41. As a result of Lulek and Stuart's conspiracy to perpetrate a fraud scheme at Traders while agenting as agents of Tex Game Systems, Maryland Games has suffered damages from the loss of the fraudulent payouts.

WHEREFORE, Maryland Games respectfully requests judgment against Lulek, Stuart, and Tex Game Systems, jointly and severally, in an amount not less than $75,000, and punitive damages, together with interest and costs; and such further relief as the Court deems just and proper.

### COUNT 2
### (Conversion)

42. Maryland Games incorporates herein the allegations made in the preceding paragraphs of this Complaint.

43. Lulek and Stuart, acting as agents of Tex Game Systems, exercised unauthorized dominion and control over Maryland Games' property, including its source codes for the Games, when they perpetrated a scheme in which Stuart used such property to create fake pull-tabs that were subsequently inserted into the bingo machines to cause fraudulent payouts.

44. Lulek and Stuart, acting as agents of Tex Game Systems, also exercised unauthorized dominion and control over the Maryland Games' property when they accepted proceeds in excess of $100,000 that were the result of fraudulent payouts.

45. Lulek and Stuart, acting as agents of Tex Game Systems, engaged in these activities to the complete exclusion of the rightful owner, Maryland Games.

WHEREFORE, Maryland Games respectfully requests judgment against Lulek, Stuart, and Tex Game Systems, jointly and severally, (i) ordering the return of Maryland Games' source codes

and any other of its property in Defendants' possession or control; (ii) for compensatory damages in an amount not less than $75,000, and punitive damages, together with interest and costs; and such further relief as the Court deems just and proper.

## COUNT 3
## (Replevin)

46. Maryland Games incorporates herein the allegations made in the preceding paragraphs of this Complaint.

47. "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure the satisfaction of the potential judgment." FED. R. CIV. P. 64(a).

48. A plaintiff may bring a replevin action in federal court under Maryland law "regardless of whether state procedure requires an independent action[.]" FED. R. CIV. P. 64(b).

49. "In a replevin action, a party seeks . . . to recover specific goods and chattels to which he or she asserts an entitlement to possession." *111 Scherr Lane, LLC v. Triangle Gen. Contr., Inc.*, 233 Md. App. 214, 237 (2017) (internal quotation marks omitted).

50. A complaint for replevin "shall contain (1) a description of the property claimed and an allegation of its value, (2) an allegation that the defendant unjustly detains the property, (3) a claim for return of the property, and (4) any claim for damages to the property or for its detention." Md. Rule 12-601(c).

51. The source codes and server software for the Games are in the possession of Lulek, Stuart, and Tex Games Systems.

52. Maryland Games is the rightful owner of the source codes.

53. Defendants have wrongfully and unjustly detained said property from Maryland Games.

54. Accordingly, Maryland Games is entitled to the immediate return of the source codes.

WHEREFORE, Maryland Games respectfully requests judgment against Lulek, Stuart, and Tex Game Systems, jointly and severally, (i) ordering the return of Maryland Games' source codes and any other of its property in Defendants' possession or control; (ii) for compensatory damages in an amount not less than $75,000, and punitive damages, together with interest and costs; and such further relief as the Court deems just and proper.

## COUNT 4
### (Intentional Misrepresentation)

55. Maryland Games incorporates herein the allegations made in the preceding paragraphs of this Complaint.

56. Stuart, acting as an agent of Tex Game Systems, knowingly made false representations to Maryland Games when he inserted pre-printed pull tabs into the gaming machines causing the machines to award him fraudulent payouts.

57. Lulek, acting as an agent of Tex Game Systems, knowingly made false representations to Maryland Games when he aided Stuart in perpetrating the fraud scheme by scheduling Stuart to perform repairs at Traders and concealing Stuart's whereabouts on the day of his arrest.

58. At the time these representations were made, Lulek and Stuart knew the statements were false or acted with reckless disregard for the truth.

59. Stuart admitted in an interview with Detective Mudd that the pull-tabs he inserted into the machine were "fictitious."

60. Lulek and Stuart made these false representations for the purpose of deceiving Maryland Games in order to obtain the fraudulent payouts.

61. Stuart's intent is further evidenced by his concealment of the pull tabs on Trader's surveillance footage and his admission to law enforcement that he manipulated the bingo machines at Traders to obtain funds.

62. Lulek's intent to deceive Maryland Games is further evidenced by his concealment of Stuart's whereabouts on the day of his arrest.

63. Maryland Games relied on Lulek and Stuart's false misrepresentations and thereby suffered damages in the loss of the fraudulent payouts.

WHEREFORE, Maryland Games respectfully requests judgment against Lulek, Stuart, and Tex Game Systems, jointly and severally, in an amount not less than $75,000, and punitive damages, together with interest and costs; and such further relief as the Court deems just and proper.

Dated: December 17, 2025                                    Respectfully submitted,

/s/ Joseph Selba
Joseph Selba, Bar No. 29181
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202
(410) 752-9753
jselba@tydings.com
*Counsel for Plaintiff*